UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| ALERT 24 SECURITY, LLC, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. 5:11-cv-21 |
| § | |
| TYCO INTERNATIONAL, LTD., *et al*, § | |
| § | |
| Defendants. § | |

## **OPINION AND ORDER**

Pending before the Court is Defendants' motion to dismiss for lack of personal jurisdiction, improper process and service of process, Plaintiff's response, and Defendants' reply.[1] After considering the motion, response, reply, record and controlling authorities, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction. ADT Private Security Services de Mexico, S.A. de C.V. and Tyco International Limited are therefore dismissed from this case. Furthermore, the motions to dismiss based on improper process and improper service of process are **DENIED** as moot.

**I.    BACKGROUND**

Plaintiff herein, Alert 24 Security, LLC ("Alert 24"), is a Texas limited liability corporation, but a citizen of Arizona.[2] Alert 24 alleges that prior to the inception of this lawsuit, Alert 24 was a defendant in a state court action brought by ADT Security Services, S.A. de C.V. ("ADT Mexico"), a non-party to this lawsuit.[3] Alert 24 counter-claimed in the state court action and, on or about October 14, 2009, Alert 24 was awarded damages by a jury.[4] The counter-claim

---

[1] Dkt. Nos. 3, 9 & 15.
[2] Dkt. No. 6.
[3] Dkt. No. 9 at ¶¶ 1 & 2.
[4] Dkt. No. 1 at p. 31; Dkt. No. 9 at ¶¶ 8, 9 & 10.

was based on ADT Mexico's use of Alert 24's Electronic Event Detection Devices ("EEDDs") which are located exclusively in Mexico.[5] According to Alert 24, the jury damages were calculated only through October 1, 2009.[6]

Alert 24 alleges that on or about January 25, 2010, it sent a demand letter to Defendants, Tyco International, Ltd. ("Tyco Int'l") and ADT Private Security Services de Mexico, S.A. de C.V. ("ADT Private Security"), asking them to either cease the use of the EEDDs located in Mexico or to pay for the use of the EEDDs.[7] Alert 24 argues that Defendants' failure to respond and continued use of the EEDDs resulted in a formation of a contract—a contract which Defendants have now breached.[8]

On January 27, 2011, Alert 24 filed in this case an amended petition and application for temporary injunction.[9] Alert 24 based its amended petition on four causes of action: (1) breach of contract, (2) quantum meruit, (3) unjust enrichment and (4) trespass to personality.[10]

On March 4, 2011, Defendants removed this action on the basis of diversity jurisdiction.[11] On March 11, 2011, Defendants filed a motion to dismiss for lack of personal jurisdiction, improper process and service of process.[12]

## II. PRELIMINARY MATTER

Alert 24 would have this Court exercise personal jurisdiction over Defendants in this case, in part, based on the actions of various business entities that are not parties to this action. Alert 24 should have clearly identified the entities and then attempted to identify jurisdictionally relevant links between those entities and Defendants. By relying on vague designations such as

---

[5] *Id.* at ¶¶ 2-10.
[6] Dtk. No. 1 at p. 31.
[7] *Id.* at pp. 32-33; Dkt. No. 9 at ¶¶ 11-13.
[8] Dkt. No. 1 at pp. 32-33.
[9] *Id.* at pp. 26-41.
[10] *Id.* at pp. 32-34.
[11] Dkt. No. 1.
[12] Dkt. No. 3.

"Tyco" and "ADT" when more precise designations were readily available, Alert 24 has done little more than muddy the waters. This approach is particularly perplexing since much of the evidence cited by Alert 24 provides more specific corporate designations—designations that are crucial in this context. When a party files a pleading laden with ambiguities, the Court must interpret those ambiguities, and the filing party runs the risk that its imprecise arguments will be misinterpreted.

### III.   ANALYSIS

If the Court finds that it lacks personal jurisdiction over Defendants, the issues of improper process and service of process will be rendered moot. The Court will begin with the personal jurisdiction analysis.

The burden of showing that the Court may exercise personal jurisdiction over Defendants falls on Alert 24.[13] In their filings, the parties have focused exclusively on "minimum contacts." Accordingly, the Court will limit its personal jurisdiction analysis to a minimum contacts theory of personal jurisdiction. In *Mullins v. TestAmerica, Inc.*,[14] the Fifth Circuit recited the relevant test for determining whether a federal court in Texas sitting in diversity may exercise personal jurisdiction over non-resident defendants such as Tyco Int'l and ADT Private Security.

> A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." To satisfy the requirements of due process, the plaintiff must demonstrate: "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"[15]

---

[13] Luv N' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006).
[14] 564 F.3d 386 (5th Cir. 2009).
[15] *Id.* at 398 (quoting Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir.2008)).

Therefore, the Court must evaluate all of Defendants' alleged links to Texas and will then determine whether these links rise to the level of "minimum contacts" necessary to exercise jurisdiction.

> "Minimum contacts" can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction. Specific jurisdiction over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are "continuous and systematic."[16]

Generally, "at this stage the plaintiff is required to present only a *prima facie* case for personal jurisdiction."[17] After sifting through the record, it appears that Alert 24 **alleges** numerous facts which it argues support an exercise of personal jurisdiction over Defendants, or at the very least, entitle Alert 24 to jurisdictional discovery. The facts alleged by Alert 24 are:

1) That a contract arose between Alert 24 and ADT Private Security after Alert 24 sent a demand letter to ADT Private Security.[18]

2) Defendants engaged in a conspiracy to commit torts by directing the filing of the Webb County lawsuit and by harming a Texas resident with acts committed in other jurisdictions.[19]

3) ADT Private Security's "predecessor in interest" sued Alert 24 in Webb County, Texas.[20]

4) A relationship exists between "Tyco" and "ADT."[21]

5) Defendants and ADT Mexico comprise a single business enterprise.[22]

---

[16] Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000) (quoting Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-416 (1984)) (citing Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994)).
[17] Walk Haydel & Assoc. v. Coastal Power Production Co., 517 F.3d 235, 241 (5th Cir. 2008).
[18] Dkt. No. 1 at pp. 32-33; Dkt. No. 9 at ¶¶ 11-13.
[19] Dkt. No. 9 at ¶¶ 19 & 23.
[20] *Id.* at ¶¶ 2-7.
[21] *Id.* at ¶¶ 15-16.
[22] *Id.* at ¶¶ 28-29.

6) Tyco Int'l has shareholders who receive proxy statements from Tyco on an annual basis and Tyco Int'l issues dividends to Texas residents from the money it collects from its subsidiaries.[23]

7) Tyco Int'l has a litany of connections with Texas through various subsidiaries and divisions.[24]

8) Defendants advertise in Texas.[25]

9) Defendants advertise directly to Texas citizens through a website that includes an e-mail function through which Texas citizens may seek information, advice and other communications directly from employees and representatives of Tyco and ADT.[26]

The Court will now evaluate these alleged connections to determine whether they support an exercise of personal jurisdiction or entitle Alert 24 to conduct limited jurisdictional discovery.

**A.     Specific Jurisdiction**

Due to the nature of the allegations, the Court will analyze whether the first five assertions support specific jurisdiction and whether the remaining assertions support general jurisdiction. The Court will address the first five assertions in three sections.

### 1.     Demand Letter

Alert 24 alleges that it sent a demand letter to ADT Private Security which called for various actions by ADT Private Security. This unilateral action by Alert 24 represents no action by ADT Private Security and is therefore not a contact for jurisdictional purposes.

### 2.     Tort and Conspiracy

Alert 24 claims that Defendants engaged in a tort in the State of Texas because Defendants filed suit in Texas or directed that suit be filed in Texas and because Defendants' acts

---

[23] *Id.* at ¶ 29.
[24] *Id.* at ¶¶ 30 & 31.
[25] *Id.* at ¶ 32.
[26] *Id.* at ¶ 33.

harmed Alert 24, "a Texas resident."[27] Alert 24 cites *Prejean v. Sonatrach, Inc.*[28] for the proposition that "[a]t least part of the underlying tort occurs at the place of the tortious injury."[29] While *Prejean* does support the proposition that a tort includes the tortious injury, the Fifth Circuit in that case specifically rejected the argument that the tortious injury is the economic harm. This Court similarly rejects Alert 24's argument that because Alert 24 was harmed in Texas, Defendants were doing business in Texas. The Court finds that the allegation that Defendants committed a tort involving Alert 24's property in Mexico is insufficient to support an exercise of personal jurisdiction over Defendants in Texas simply because Alert 24, an Arizona citizen, may have been harmed financially in Texas.

Similarly, Alert 24's conclusory allegations that the state court lawsuit was the product of a "conspiracy" and that the filing of the suit itself was tortious,[30] do not advance Alert 24's argument that this Court may exercise personal jurisdiction over Defendants. There is no evidence that any court has found that the state court lawsuit was tortious and Alert 24 is not pursuing such a claim here. The relevant inquiry is the nature of Defendants' connections, if any, with the state court plaintiff, ADT Mexico. Whether the lawsuit itself was tortious is not relevant to this analysis. Additionally, a conclusory allegation of conspiracy is insufficient as a matter of law to support an exercise of personal jurisdiction.[31]

### 3. Defendants' Corporate Relationships

In the state court lawsuit, ADT Mexico, which is not a party to this lawsuit, sued Alert 24. Even if the state court lawsuit could support this Court's exercise of personal jurisdiction

---

[27] Dkt. No. 9 at ¶ 19. (Alert 24 claims that it is a Texas resident, however, it is a limited liability company whose sole owner is an Arizona citizen. [Dkt. No. 6]. Thus, Alert 24 is itself an Arizona citizen, rather than a Texas citizen.).
[28] 652 F.2d 1260, 1268 (5th Cir. 1981).
[29] Dkt. No. 9 at ¶ 19.
[30] *Id.*
[31] Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 631-632 (5th Cir. 1999).

over the parties to that suit, Tyco Int'l and ADT Private Security, the defendants herein, were not parties in that lawsuit. In order for Alert 24 to be entitled to conduct jurisdictional discovery, it must first advance a legal theory under which Defendants have a connection with this state that would justify an exercise of personal jurisdiction over them.

Alert 24 appears to claim that the requisite connections are provided by various relationships between ADT Mexico, Tyco Int'l and ADT Private Security. The allegations made by Alert 24 are (1) that ADT Private Security is the successor in interest to ADT Mexico, (2) that Tyco Int'l and ADT Private Security have a relationship, and (3) Defendants and ADT Mexico comprise a single business enterprise. While the Court agrees that the relationships between these entities could be relevant to the personal jurisdiction analysis, the parties have misdirected their arguments. As explained below, the parties have not provided the Court with the *relevant* law for evaluating those relationships.

This Court finds *Patin v. Thoroughbred Power Boats Inc.*[32] instructive. In *Patin*, the Fifth Circuit considered an appeal from a district court in Louisiana. The case involved questions of piercing the corporate veil and related issues.[33] The court began by applying the choice of law rules of the forum state, Louisiana.[34] Next, the court found that the Louisiana Supreme Court "would most likely conclude that the law of the state of incorporation governs the determination when to pierce a corporate veil."[35] Because the relevant company was incorporated in Florida, the Fifth Circuit evaluated whether the corporate veil could be pierced based on *Florida law*.[36] Based on the same rationale, the Fifth Circuit applied Florida law to the

---

[32] 294 F.3d 640 (5th Cir. 2002).
[33] *Id.*
[34] *Id.* at 646.
[35] *Id.* at 647.
[36] *Id.* at 647-649.

issue of successor liability.[37]  Interestingly, when the Fifth Circuit shifted its focus to the issue of personal jurisdiction, it applied its earlier analysis of successor liability under Florida law to its personal jurisdiction analysis.[38]

The Court will follow the Fifth Circuit's direction in *Patin*, in evaluating the corporate relationships in the current case.  Because the Court is sitting in diversity, it will employ the choice-of-law rules of Texas, the forum state.[39]  There are two possible choice-of-law approaches that may be appropriate.  In this case, both choice-of-law approaches reach the same result.

### i.      Place of Incorporation

When faced with situations similar to the present case, other courts have found that the relevant law for evaluating a corporation's relationships is the state of incorporation.[40]  Here ADT Mexico and ADT Private Security are Mexican corporations and Tyco Int'l is a Swiss corporation.  Therefore, the alleged relationships between these companies must be evaluated under either Swiss or Mexican law—not the laws of Texas.

### ii.     Most Significant Relationship

Alternatively, a Texas court might determine the relevant law under a different choice-of-law theory.  Texas follows "[t]he 'most significant relationship' rule . . . [in] all civil matters except those contract cases in which the parties have agreed to a valid choice of law clause."[41]  Therefore, the Court will conduct a most significant relationship analysis to determine what law applies to the alleged relationships between the ADT Mexico and Defendants.  "[T]he most

---

[37] *Id.* at 649.
[38] *Id.* at 654-655.
[39] Delta Seaboard Well Services, Inc. v. American Int'l Specialty Lines Ins. Co., 602 F.3d 340, 343 (5th Cir. 2010).
[40] *See* Alberto v. Diversified Group, Inc., 55 F.3d 201, 203-208 (5th Cir. 1995); *see also* Ace American Ins. Co. v. Huntsman Corp., 255 F.R.D. 179, 195-196 (citing Davaco, Inc. v. AZ3, Inc., No. 3:07-cv-803, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008)).
[41] Crisman v. Cooper Industries, 748 S.W.2d 273, 276 (Tex. App.—Dallas 1988) (writ denied) (citing Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984)).

significant relationship approach [is] set forth in §§ 6 and 145 of *Restatement (Second) of Conflict of Laws*."[42]

> § 6. Choice-Of-Law Principles
>
> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.[43]
>
> § 145. The General Principle
>
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.[44]

As the Court considers each factor under § 6, it will consider the contacts listed in § 145 to the extent they are relevant.

The Court first considers the needs of the interstate and international system. "Probably the most important function of choice-of-law rules is to make the interstate and international systems work well. Choice-of-law rules, among other things, should seek to further harmonious

---

[42] Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 420-421 (Tex. 1984).
[43] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971).
[44] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

relations between states and to facilitate commercial intercourse between them."[45]  This suit involves the use of, or proceeds from, property that is located exclusively in Mexico.  The relationships that the Court must analyze are between two Mexican companies and a Swiss company.[46]  These relationships are not alleged to have developed in Texas.  Therefore, international harmony will not be furthered by the application of Texas law, but by instead applying either Mexican or Swiss law.

The next consideration is the relevant policies of Texas, the forum state.  Here, the policies governing Texas corporations will not be advanced by applying those policies to foreign corporations based on corporate relationships that did not develop in Texas.

The Court now considers the policies of the other interested states.  The corporate law policies of Switzerland are likely to be advanced by applying those policies to Tyco Int'l which is incorporated in Switzerland.  Furthermore, to the degree that Tyco Int'l had relationships with foreign companies that were centered in Switzerland, Switzerland may have an interest in applying Swiss law to those relationships.  Likewise, Mexican corporate law polices would likely be advanced by applying those policies to the two companies incorporated in Mexico and to corporate relationships centered in Mexico.

As to the protection of justified expectations, "[g]enerally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state."[47]  It is hard to see how Alert 24, an Arizona citizen, could have justified expectations that these Mexican and Swiss

---

[45] RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6 comment (d).

[46] The Court notes that Alert 24 claims in its amended complaint that Tyco Int'l's principal place of business is New Jersey. [Dkt. No. 1 at p. 28].  Tyco Int'l disputes this assertion. [Dkt. No.1 at p. 2].  Because this analysis focuses on the corporate relationships among a Swiss company and two Mexican companies, and New Jersey has no apparent connection with this aspect of the case or with any of the activity on which this case is based, the Court finds that New Jersey law is not a contender under the "most significant relationship" analysis.

[47] RESTATEMENT (SECOND) OF CONFLICTS § 6 comment (g).

corporations would be subject to the corporate law of Texas. On the other hand, when Tyco Int'l chose to incorporate in Switzerland it had an expectation that it would receive the benefit of that corporate code. Similarly, ADT Mexico and ADT Private Security were expecting to receive the benefits and protections of Mexican law when they incorporated there.

Since there is no evidence before the Court regarding the laws of Switzerland and Mexico, the Court cannot determine whether there is basic underlying policy in this field by comparing them with Texas law. Nor may the Court ascertain which law would further that undetermined policy.

Next the Court finds that the most certain, predictable and uniform results will be achieved by analyzing the corporate relationships of Swiss and Mexican companies under the laws of Switzerland and Mexico—not the laws of Texas.

The Court finds that the seventh factor, the ease of determination and application of the law to be applied, is not a significant factor in this case.

Ultimately, the Court finds that either Switzerland or Mexico has the most significant relationship to the issue of the links between Tyco Int'l, ADT Private Security and ADT Mexico.

### iii. Alert 24's Failure to Meet its Burden

The Court has conducted two choice-of-law analyses and both indicate that either Swiss or Mexican law is the appropriate law for analyzing the relationships among Defendants and ADT Mexico. Alert 24 did not provide any arguments under the laws of Mexico or Switzerland. Therefore, the Court finds that Alert 24 has failed to meet its burden of asserting a relevant theory which would permit ADT Mexico's involvement in the state court suit to be attributed to Defendants.

### B. General Jurisdiction

Because Alert 24' claims to do not arise out of or relate to the remaining alleged contacts, such contacts may only be considered for the purposes of general jurisdiction. "The contacts must be reviewed in toto, and not in isolation from one another."[48]

First, Alert 24 asserts that "Tyco has many shareholders in Texas who receive proxy statements from Tyco on an annual basis and issues dividends to Texas residents from the money it collects from its subsidiaries."[49] Even if relevant, the evidence cited in support of this proposition provides little insight into whether Tyco Int'l has systematic and continuous contacts with the state of Texas. There is no indication as to the number of shareholders and the level of contact with the shareholders appears speculative. Therefore, this allegation does little to support an exercise of general jurisdiction and does not warrant jurisdictional discovery.

Second, Alert 24 points to Tyco Int'l's connections with the state of Texas via its subsidiaries. "As a general rule, however, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which defendant may be affiliated."[50] Alert 24's assertion that Tyco Int'l *wholly owns* various subsidiaries is, by itself, insufficient to show that these subsidiaries are alter egos whose contacts should be attributed to Tyco Int'l because stock ownership alone is insufficient to impute the actions of the subsidiary for the purposes of establishing minimum contacts.[51] Importantly, Alert 24 has not alleged a theory that would

---

[48] Johnston v. Multidata Systems Int'l. Corp., 523 F.3d 602, 610 (5th Cir. 2008).
[49] Dkt. No. 9 at ¶ 29.
[50] Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 345-346 (5th Cir. 2004) (citations omitted).
[51] *See* Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1070 n.12 (5th Cir. 1992); *see also* PHC-Minden, L.P. v. Kimberly-Clark Corp., 235 S.W.3d 163, 175 (Tex. 2007) (quoting Gentry v. Credit Plan Corp. of Houston, 528 S.W.2d 571, 573 (Tex. 1975)).

permit the contacts of these subsidiaries to be attributed to Defendants. Therefore, Alert 24 may not conduct discovery to further develop this theory.

Third, Alert 24 highlights Tyco and ADT's website as another relevant connection with the state of Texas. In *Revell v. Lidov*,[52] the Fifth Circuit noted that it had adopted a sliding scale for evaluating website interactivity, but that the approach was ill suited for general jurisdiction inquiries.[53] Here, Alert 24's scant allegations do not merit a thorough analysis. Alert 24 states that Defendants' website advertises directly to Texas residents, but provides no evidence that the advertising "is directed at Texas residents any more than . . . other users of the internet."[54] Furthermore, the claim that Texas residents may interact with a website stops short of alleging that Texas residents have actually engaged in business transactions with Defendants via the website.[55] Ultimately, this allegation offers negligible support to a finding of general jurisdiction and does not merit jurisdictional discovery.

Fourth, due to the lack of clarity in Alert 24's response, it is unclear whether Alert 24 is alleging that certain advertising activity was conducted by Defendants themselves or that it was conducted by corporations related to Defendants. To the extent Alert 24 was highlighting activities of various subsidiaries, the Court will not consider those actions because Alert 24 has not alleged a theory which would permit the Court to attribute the actions of the subsidiaries to Defendants.

Out of an abundance of caution, the Court will assume that Alert 24 is also alleging that Defendants themselves advertised in Texas. Ultimately, general assertions that Defendants advertised in Texas and pictures of a van displaying corporate logos stop far short of

---

[52] 317 F.3d 467 (5th Cir. 2002).
[53] *Id.* at 471.
[54] QR Spex, Inc. v. Motorola, Inc., 507 F. Supp. 2d 650, 662-663 (E.D. Tex., 2007).
[55] *See* Quassas v. Daylight Donut Flour Co., LLC, Civil Action No. 4:09-cv-208, 2009 WL 1795004, *5 (S.D. Tex., June 24, 2009) (citing Mink v. AAAA Dev. LLC, 190 F.3d 333, 337 (5th Cir. 1999)).

demonstrating that either defendant has systematic and continuous contacts with Texas. Once again, the allegations related to advertising offer little that supports a finding of general jurisdiction and do not merit jurisdictional discovery.

Ultimately, Alert 24's allegations *in the aggregate* do not support a finding of general jurisdiction. Furthermore, the allegations are insufficient to warrant jurisdictional discovery.

### III. CONCLUSION

After considering the motion, response, reply, record and controlling authorities, the Court finds that Alert 24 has failed to present a prima facie case that the Court may exercise personal jurisdiction over Defendants under either general or specific jurisdiction. Furthermore, none of Alert 24's allegations merit jurisdictional discovery. Therefore, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction. The motions to dismiss for improper process and service of process are **DENIED** as moot. The clerk of court is ordered to terminate the case.

IT IS SO ORDERED.

DONE this 18th day of October, 2011, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE